151 So.2d 783

**AMERICAN SOUTHERN INSURANCE CO., et al.**

v.

**DIME TAXI SERVICE, INC.**

**3 Div. 960.**

Supreme Court of Alabama.

April 4, 1963.

J. O. Sentell, Jr., Montgomery, for appellants.

Hill, Hill, Stovall & Carter, Montgomery,
·for appellee.

LIVINGSTON, Chief Justice.

This is an appeal by the American Southern Insurance Company and Homer C. Sanders, as Administrator of the estate of Hubert Ledbetter, deceased, from a final decree of the Circuit Court of Montgomery County, Alabama, in Equity, in a suit brought by Dime Taxi Service, Inc.

The bill alleges, in substance, the following facts:

That on October 30, 1958, Hubert Ledbetter was employed by the Dime Taxi Service, Inc.; that on said day, Hubert Ledbetter, while acting in the line and scope of his employment with the Dime Taxi Service, Inc., was transporting a passenger for hire, namely, one Edna V. Daniel, and that he so negligently drove the motor vehicle in which the said Edna V. Daniel was riding as a passenger that as a proximate result and consequence thereof, the vehicle collided with another motor vehicle upon a public street of Montgomery, Alabama, and that as a proximate result and consequence thereof, Edna V. Daniel sustained personal injuries and the said Hubert Ledbetter was killed; that at the time of said accident, there was on file with the State Director of Public Safety, in accordance with the Motor Vehicle Safety Responsibility Act, a written certificate of the respondent, American Southern Insurance Company, that there was then in effect a motor vehicle liability policy for the benefit of the intestate, Hubert Ledbetter; and that the insurance so certified provides

liability coverage of $5000 for each person to a limit of $10,000 for each accident:

That on June 26, 1959, Edna V. Daniel filed suit against Dime Taxi Service, in the Circuit Court of Montgomery County, Alabama for damages for personal injuries sustained in said accident; that Dime Taxi Service employed counsel and actively defended the suit; but that on February 3, 1960, a judgment was rendered in favor of Edna V. Daniel against Dime Taxi Service for $11,000 and cost of court; and Dime Taxi Service became responsible for the payment of same by reason of the negligence of said Hubert Ledbetter;

That Hubert Ledbetter died on October 30, 1958, the same day of the accident; that letters of administration upon his estate were issued to Homer C. Sanders by the Judge of Probate of Montgomery County, Alabama, on April 28, 1960; and that Dime Taxi Service filed a claim against the estate of Hubert Ledbetter, deceased, for the sum of $10,000, on to wit, May 4, 1960; that said claim was disallowed; that the estate of Hubert Ledbetter is without funds, but that American Southern Insurance is liable to your complainant, Dime Taxi Service, in the sum of $5,000 and the further sum of $1,000 as a reasonable attorney's fee, all with interest from March 3, 1960.

The bill prays (1) to be subrogated to the rights of Edna V. Daniel in her judgment against Dime Taxi Service; (2) a judgment for $6,000, with interest from March 3, 1960, against Homer C. Sanders, as administrator, and American Southern Insurance Company; and (3) general relief.

Edna V. Daniels, who was made a party respondent to the bill of complaint, admitted all the allegations of the bill.

The American Southern Insurance Company filed a plea in abatement, which it later amended.

The plea in abatement, as amended, relied on a provision of the policy which provided that no action arising from bodily injury, or based upon bodily injury liability, shall

lie against the insurer unless, as a condition precedent thereto, the amount of the insured's obligation to pay shall have been finally determined either by judgment against insured after an actual trial, or by written agreement of the insured, the complainant and this respondent.

It was further averred in the amended plea that the amount of the insured's obligations to pay has never been finally determined, either by judgment against the insured, or his estate, after actual trial, or by written agreement of the insured (or his personal representative), the claimant and this respondent.

The court, on a hearing to test the sufficiency of the plea, as amended, held the same insufficient.

The insurance company and the administrator of the estate of Hubert Ledbetter filed separate demurrers to the bill as a whole, and to each of the several alleged aspects thereof, separately and severally. The demurrers were overruled.

The facts are not in dispute and are essentially as alleged in the bill of complaint and outlined above. The assignments of error raise only the questions raised by the plea in abatement and the demurrers.

### On the Plea in Abatement

The basic and fundamental issue in this case is the right of the master or employer to collect from the liability insurer of his servant or employee damages which the master has been required to pay by reason of his legal responsibility for the negligent act of the servant.

■ A master is entitled to recover from his servant damages which the master has been required to pay by reason of the negligence of his servant. Huey v. Dykes, 203 Ala. 231, 82 So. 481, 35 Am.Jur. § 101, p. 530. Our cases establish the rule that where a defendant is held liable only because he is responsible for the act of another, he cannot be held liable if such other is exonerated. Great A & P Tea Co. v. Traylor, 239 Ala. 497, 195 So. 724; Griffin v. Bozeman, 234 Ala. 136, 173 So. 857; Waters v. Anthony, 252 Ala. 244, 40 So.2d 316. And where the master and servant are sued jointly, a judgment against the master absolving the servant of liability for tort committed by the servant is inconsistent and must be set aside. Carter v. Franklin, 234 Ala. 116, 173 So. 861; Sibley v. Odum, 257 Ala. 292, 58 So.2d 896. The rule that there is no contribution between joint tort-feasors does not apply in instances in which one tort-feasor is liable only by reason of the negligence or fault of the other. In such instance, as between the parties, the one acting in the representative capacity and himself guilty of negligence must first respond in damages. Huey v. Dykes, supra.

■ The principle of the foregoing cases requires that if a servant is liable to the master for tort committed by the servant, the servant's insurer will also be liable. While we have been cited to no Alabama case, nor has our research revealed one, where this precise question has been decided in this jurisdiction, the authorities in other jurisdictions where the question has arisen, hold that the insurer of the servant is obligated to pay up to the limits of the servant's policy the amount that the master has become liable to pay by reason of the tort of the servant. Continental Casualty Co. v. Phoenix Construction Co., 46 Cal.2d 423, 296 P.2d 801, 57 A.L.R.2d 914; Maryland Casualty Co. v. Employers Mutual Liability Insurance Co. of Wisc., 208 F.2d 731 (2nd Cir.); Canadian Indemnity Co. v. United States Fidelity & Guaranty Co., 213 F.2d 658 (9th Cir.); Employers Mutual Liability Insurance Co. of Wisc. v. Pacific Indemnity Co., 167 Cal.App.2d 369, 334 P.2d 658 (Cal.). As stated by the court in the Continental Casualty Company case, supra:

"Under equitable principles of subrogation the insurer of the employer who has been compelled to pay the judgment against the employer may recover

against the negligent employe or the employe's insurer * * *."

The foregoing principles are not controverted by·appellants, but their contentions are largely predicated upon questions of procedure rather than substance.

The first issue raised by appellant, American Southern Insurance Company, is set forth in its contention that it can be sued only after judgment is rendered against its insured (or the administrator of the servant), and that it is improperly joined in the suit against the insured (or his administrator).

If this were a policy of private insurance between the parties, the provision making the final judgment against the insured a condition precedent to suing the insurer might be tenable, and such being the case, it probably would not be proper to join the two parties in the same suit.

But here we have a policy of insurance issued before the accident occurred under the Alabama Motor Vehicle Financial Responsibility Act and certified to the Director of Public Safety of Alabama, as provided in that statute, and for the purpose of inducing the Director of Public Safety to issue a driver's license to the insured.

Examination of the certificate which was introduced on the trial of the case discloses that it is a certificate issued to the nonowner of an automobile, and is a protection to the public against liability incurred by the insured in the operation of a motor vehicle not owned by him. The certificate here involved is a certificate of future insurance given to induce the restoration of a revoked driver's license, an SR–22. The Alabama Motor Vehicle Financial Responsibility Act, and the extent of the liability which it imposes, is as much a part of the policy as if it were written into it, and no private understanding or provisions can alter, modify, limit or abrogate that liability. The Financial Responsibility Act is for the protection and benefit of the public and does not provide that a judgment

against the insured is a condition precedent to liability thereunder.

As we understand appellants' brief, it concedes that if the Financial Responsibility Act is for the protection of the public, an injured party could join the insurer in a suit against the insured.

The appellants then seek to show wherein the Financial Responsibility Act is like an ordinary insurance policy and is not for the protection of the public.

We cannot agree. The significant provisions of this Act are that the insurance is against loss from liability imposed for damages and does not provide for insurance against final judgment rendered against the insured. It is also to be noted that the statute further provides that the insurance becomes absolute whenever "injury or damage" occurs, and that "no statement made by the insured or on his behalf and no violation of said policy shall defeat or void said policy." In our opinion, it is a protection which runs from the insurer to the third party claimant. See Sec. 74(55), (58), (59), (60), (62) and (63) of Title 36, Code 1940, Pocket Part.

If the Financial Responsibility Act is for the benefit of the public, an injured member of the public can sue upon it. Baggett v. Jackson, 244 Ala. 404, 13 So.2d 572. The Financial Responsibility Act, and particularly that part of it which requires a certificate of insurance to be filed to reinstate a license, is for the benefit and protection of the public rather than for the benefit of the person seeking reinstatement of his license. The obvious purpose, as well as the express provisions, are inconsistent with the premise that the protection is for the insured rather than the public. See Sullivan v. Cheatham, 264 Ala. 71, 84 So.2d 374, where this court has ruled, in dealing with other sections of the Act, that the Act was designed for the protection or benefit of the public. In our opinion, such defenses are not available against an action on a policy certified under the Motor Vehicle Responsi-

bility Act. Section 74(62) (f)1, Title 36, Code 1940, Pocket Part.

Appellants insist, separately and severally, that the court erred in overruling the demurrer of each appellant and in holding that appellee be subrogated to the rights of respondent, Edna V. Daniel. While we find no case directly in point in this jurisdiction, we think that it is well settled elsewhere that where recovery is obtained against a master under the theory of respondeat superior for the tort or negligence of his servant, the master is subrogated to the rights of the injured party against the servant. 83 C.J.S. Subrogation § 16, pp. 616 and 617; Fenly v. Revell, 170 Kan. 705, 228 P.2d 905; Losito v. Kruse, 136 Ohio St. 183, 24 N.E.2d 705, 126 A.L.R. 1194; Myles v. Meineke, 82 Ohio App. 126, 78 N.E.2d 917; Maryland Casualty Co. v. Aetna Casualty & Surety Co., 191 Va. 225, 60 S.E.2d 876.

Subrogation is primarily an equitable remedy. As stated in Sheldon, The Law of Subrogation, 2d Ed., p. 2:

"It is broad enough to include every instance in which one party pays a debt for which another is primarily answerable, and which, in equity and good conscience, should have been discharged by the latter * * *."

The principle was recognized in Bradley v. Bentley, 231 Ala. 28, 163 So. 351, where it was said:

"Subrogation has always been one of the recognized subjects of equity jurisdiction. No one, we assume, would question the right of a surety, where property, upon which he had a lien, had been exhausted in payment of the obligation of the principal, to invoke the jurisdiction of a court of equity to enforce equitable subrogation to the rights of the creditor, whose claim had been paid by the proceeds of the property upon which this surety had a lien. Such a right is founded upon the plainest principles of equity and morality."

None of the cases cited by appellants dealt with the doctrine of subrogation, and, indeed, in the case of Vandiver v. Pollak, 107 Ala. 547, 19 So. 180, a case involving indemnity or contribution, the suit was property brought in equity.

Appellants further insist that this suit cannot be maintained because the cause of action arose after the death of the servant, Hubert Ledbetter, but before the appointment of an administrator. There is no merit in this insistence.

In the case of Mitchell v. Conway, 257 Ala. 648, 60 So.2d 676, it was said:

"* * * One standing in the status of a surety for the payment of a debt due primarily by defendant, even before he pays the debt but after it becomes due, has the right to require the one primarily liable in so far as complainant is concerned to exonerate him either by paying the debt or securing complainant against loss * * *."

In the instant case, the cause of action arose at the moment of the accident. At that time, the deceased servant became primarily liable to Edna V. Daniel, and under the doctrine of respondeat superior, the appellee became secondarily liable at the same time the servant became liable to the master.

There is no merit in the errors complained of and the case is due to be, and is, affirmed.

Affirmed.

SIMPSON, GOODWYN and COLEMAN, JJ., concur.